UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| AOP ORPHAN PHARMACEUTICALS AG, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 20-12066-MLW |
| PHARMAESSENTIA CORPORATION, Defendant. | ) ) ) | |

MEMORANDUM AND ORDER

WOLF, D.J.                                    June 18, 2021

I.    INTRODUCTION

Plaintiff AOP Orphan Pharmaceuticals AG ("AOP"), an Austrian corporation, brings this action to enforce an arbitration award against defendant PharmaEssentia Corporation ("PEC"), a Taiwanese corporation. PEC moves to adjourn this case pursuant to Article VI of the New York Convention until the resolution of a set-aside motion pending in Germany. In the alternative, PEC moves to dismiss for lack of personal jurisdiction and for insufficient service of process under Federal Rule of Civil Procedure 12(b)(2). AOP moves for jurisdictional discovery if the court finds it has not made a sufficient showing of jurisdiction to survive the motion to dismiss. AOP also moves to strike an affidavit filed by defendant in support of a supplemental memorandum on the issue of personal jurisdiction. Finally, AOP seeks an equitable attachment that

would prevent PEC from transferring or otherwise disposing of its United States patents pending resolution of this matter.

As explained below, the court finds adjournment inappropriate in this case, particularly because the lower court in Germany has already denied the set-aside motion and AOP is moving for equitable attachment. The court also finds that service on PEC was proper under Federal Rule of Civil Procedure 12. In addition, the court finds that AOP has not made a prima facie showing that this court has personal jurisdiction over PEC. However, plaintiff's allegations, coupled with its supporting affidavits, create a colorable claim that jurisdiction exists. Therefore, the court is denying the motion to dismiss without prejudice to a renewed motion after limited discovery concerning the issue of personal jurisdiction. The court is also denying AOP's motion to strike the affidavit of D.J. Lin. Finally, it is reserving judgment on AOP's motion for equitable attachment because it cannot grant such relief unless and until it finds it has jurisdiction over defendant.

II.   PROCEDURAL HISTORY

AOP filed this case on November 18, 2020, seeking: (1) confirmation and enforcement of the arbitration award; (2) judgment in the amount of the arbitration award plus interest; fees, and expenses; (3) an order enforcing the judgment by way of reach and apply against PEC's United States patents; (4) an order that PEC "specifically perform its undertaking to carry out the

award without delay"; and (5) an ex parte Temporary Restraining Order and preliminary injunction prohibiting PEC from transferring its United States patents. See Petition at 17-18 (Dkt. No. 1). AOP also filed an ex parte motion to seal the entire proceedings, see Dkt. No. 7, as well as an ex parte motion to file the arbitration award under seal. See Dkt. No. 8.

On December 23, 2020, the court denied without prejudice AOP's motion for a temporary restraining order. See Dkt. No. 16. In doing so, the court relied upon Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc., 527 U.S. 308, 318-19 (1999), in which the Supreme Court held that federal courts do not have equity jurisdiction to grant prejudgment freeze orders in cases purely at law as temporary restraining orders or preliminary injunctions under Federal Rule of Civil Procedure 65. This court also noted that the First Circuit has suggested that such orders cannot issue under Federal Rule of Civil Procedure 64, which allows federal courts to grant certain state-law prejudgment remedies. See Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151, 159-61 (1st Cir. 2004). The December 23, 2020 Order also allowed AOP's motions to seal. The proceedings were sealed so that any additional ex parte motions for prejudgment remedies could be resolved.

AOP then filed a motion for equitable attachment pursuant to Federal Rule of Civil Procedure 64 (Dkt. No. 19). It also filed a

3

motion to continue sealing the proceedings until PEC was served or notified of the motion for equitable attachment (Dkt. No. 20). The court allowed the motion to continue the sealing temporarily on February 10, 2021 (Dkt. No. 22). The court ordered AOP to serve PEC and set an expedited briefing schedule. On March 3, 2021, AOP informed the court that PEC had been served in Taiwan by Federal Express on March 2, 2021. See Dkt. No. 23 ¶10.

On March 15, 2021, PEC filed the present motion to adjourn these proceedings or, in the alternative, to dismiss for lack of personal jurisdiction and for improper service of process (Dkt. No. 27). On March 30, 2021, AOP moved for jurisdictional discovery if the court finds it has failed to establish personal jurisdiction over PEC. See Dkt. No. 42.

III. BACKGROUND

AOP is a pharmaceutical company incorporated and having its principal place of business in Austria. See Petition ¶12 (Dkt. No. 1). It brings this claim for enforcement of an arbitration award against PEC, which is incorporated under the laws of Taiwan. Id. ¶13.

In 2009, AOP and PEC entered a License Agreement and Manufacture Agreement to develop, authorize, and market a product ("the product") for use in developing treatment for a rare blood cancer. See License Agreement (Dkt. No. 53-1 under seal) (Management Agreement incorporated as Annex 5). Under the License

4

Agreement, PEC was to produce the product, which AOP would clinically develop and sell in parts of Europe, the Middle East, and North Africa. See id. at 54-55.

On March 31, 2018, AOP requested arbitration before the International Chamber of Commerce concerning the contracts. See Arbitration Award ¶310 (Dkt. No. 56-2). AOP alleged four breaches of contract occurring from December 2011 through July 2019, which essentially consisted of delays in performance by PEC. See Arbitration Award ¶¶507-706 (Dkt. No. 56-2). The dispute was arbitrated before a tribunal under the Rules of Arbitration of the International Chamber of Commerce. The tribunal found for AOP and awarded it EUR 142,221,201 plus interest. See Arbitration Award at 190 (Dkt. No. 56-2).

IV.  DISCUSSION

   1. Adjournment

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of 1958 ("New York Convention") is implemented by 9 U.S.C. §201 et seq. Article VI of the New York Convention provides:

> If an application for the setting aside or suspension of the award has been made to a competent authority [of the country in which, or under the law of which, the award was made], the authority before which the award is sought to be relied upon may, if it considers it proper, adjourn the decision on the enforcement of the award and may also, on the application of the party claiming enforcement of the award, order the other party to give suitable security.

New York Convention Art. VI. Whether an action for enforcement should be adjourned is not an issue involving the merits of a case and may, therefore, be addressed before any other issue -- including personal jurisdiction -- is resolved. <u>See</u> <u>Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.</u>, 127 S. Ct. 1184, 1192 (2007).

The burden is on the party seeking adjournment to establish that grounds for adjournment exist. <u>See</u> <u>Hulley Enterprises Ltd. V. Russian Federation</u>, 2020 WL 6822666, at *4 (D.D.C. Nov. 20, 2020). In deciding whether to grant an adjournment it is appropriate to consider the factors that the Second Circuit enumerated in <u>Europcar Italia, S.p.A. v. Maiellano Tours, Inc.</u>, 156 F.3d 310 (2d Cir. 1998):

(1) the general objectives of arbitration -- the expeditious resolution of disputes and the avoidance of protracted and expensive litigation;

(2) the status of the foreign proceedings and the estimated time for those proceedings to be resolved;

(3) whether the award sought to be enforced will receive greater scrutiny in the foreign proceedings under a less deferential standard of review;

(4) the characteristics of the foreign proceedings including (i) whether they were brought to enforce an award (which would tend to weigh in favor of a stay) or to set the award aside (which would tend to weigh in favor of enforcement); (ii) whether they were initiated before the underlying enforcement proceeding so as to raise concerns of international comity; (iii) whether they were initiated by the party now seeking to enforce the

award in federal court; and (iv) whether they were
initiated under circumstances indicating an intent
to hinder or delay resolution of the dispute;

(5) a balance of the possible hardships to each of the
parties, keeping in mind that if enforcement is
postponed under Article VI of the Convention, the
party seeking enforcement may receive "suitable
security" and that, under Article V of the
Convention, an award should not be enforced if it
is set aside or suspended in the originating
country, see also [Hewlett-Packard Co., Inc. v.
Berg, 61 F.3d 101, 105 (1st Cir. 1995)] (noting
that insolvency of one party may play role in
determining relative hardships); and

(6) any other circumstances that could tend to shift
the balance in favor of or against adjournment.

Europcar, 156 F.3d at 317-18.

In cases such as this, where the foreign court of first

instance has already denied the set-aside motion, courts applying

the Europcar factors have found a stay inappropriate. See Aperture

Software GmbH v. Avocent Huntsville Corp., 2015 WL 12838967, at *5

(N.D. Ala. Jan. 5, 2015) (collecting cases). In such cases, the

risk of inconsistent judgments is low. Moreover, the appeal in

Germany may take a year or longer to resolve. Such delay is

especially undesirable in this case, where AOP has moved for

prejudgment relief and claimed it may suffer irreparable harm

absent such relief. Finally, this enforcement action was brought

prior to the German set-aside action and, therefore,

considerations of comity do not weigh in favor of a stay pending

that forum's decision. Accordingly, the motion to adjourn is being
denied.

## 2. Improper Service of Process

PEC argues that service was ineffective because AOP did not
properly serve the February 10, 2021 Order on PEC. See Mot. Dismiss
at 17-18 (Dkt. No. 28). This contention is not correct for several
reasons. First, the Federal Rules of Civil Procedure do not require
that AOP serve a court order on PEC. Second, the court did not
order AOP to serve the February 10, 2021 Order and, therefore, AOP
did not fail to comply with any court order. Finally, even if AOP
did have an obligation to serve the Order and failed to do so,
that would not be grounds for dismissal. PEC does not request any
other form of relief and does not cite any authority for the
proposition that a case could be dismissed for this reason.

PEC also objects to the fact that it was served the summons
and complaint in Taiwan by Federal Express. However, PEC made this
argument in a footnote in which it merely cited two cases from
district courts in other circuits and wrote that PEC "sid[ed] with
these decisions." See Mem. Supp. Mot. Dismiss at 18 n.13 (Dkt. No.
28). The First Circuit has held that "issues adverted to in a
perfunctory manner, unaccompanied by some effort at developed
argumentation, are deemed waived." United States v. Zannino, 895
F.2d 1, 17 (1st Cir. 1990). Accordingly, the motion to dismiss for
insufficient service of process may be denied without assessing

8

the merits of PEC's objection to having been served in Taiwan by Federal Express.

However, the court finds PEC's objection is unmeritorious. Serving a corporation abroad is proper "unless prohibited by the foreign country's law, by . . . using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt." Fed. R. Civ. P. 4(f)(2). In this case, the clerk addressed and sent the relevant document to PEC by Federal Express, which issued a receipt. See Blatchey Decl. ¶¶9-10. Courts are split on what it means for a method to be "prohibited by the foreign country's law." Some courts find that anything not permitted by a country's law is prohibited for the purpose of this provision of Rule 4. See, e.g., Procter & Gamble Cellulose Co. v. Viskoza-Loznica, 33 F. Supp. 2d 644, 664-65 (W.D.Tenn.1998); Graval v. P.T. Bakrie & Bros., 986 F. Supp. 1326 (C.D.Cal.1996). However, that is a minority view that is inconsistent with the plain language of the Rule, and a court in the First Circuit has held that service by Federal Express in Taiwan is permissible. See SignalQuest, Inc. v. Tien-Ming Chou, 284 F.R.D. 45, 48-50 (D.N.H. 2012); see also SEC v. Alexander, 248 F.R.D. 108, 111-12 (E.D.N.Y. 2007) (collecting cases); Fujitsu Ltd. v. Belkin Int'l, Inc., No. 10-cv-3972, 2011 WL 3903232, *3 (N.D. Cal. Sept. 6, 2011). In light of the plain text of the rule and the reasoning in cases this court

9

finds persuasive, the court concludes that service by Federal Express is proper in Taiwan.

### 3. Motion to Dismiss for Lack of Personal Jurisdiction

#### a. Legal Standard

When the court's personal jurisdiction over a defendant is challenged, the plaintiff bears the burden to establish that jurisdiction exists. See Adams v. Adams, 601 F.3d 1, 4 (1st Cir. 2010). Three methods exist for determining whether the plaintiff has met its burden at the motion to dismiss stage. See Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995). The "prima facie" method is most appropriate in cases in which the parties have not presented conflicting versions of the facts. See Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 712 (1st Cir. 1996).

To make a prima facie showing of jurisdiction, the plaintiff "cannot rest upon the pleadings but is obliged to adduce evidence of specific facts." Foster-Miller, 46 F. 3d at 145; Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 675 (1st Cir. 1992)("[P]laintiffs may not rely on unsupported allegations in their pleadings to make a prima facie showing of personal jurisdiction."). The court must "consider . . . whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." Foster-Miller, 46 F.3d at 145. The court accepts the plaintiff's proffered and properly documented facts as

10

true "irrespective of whether the defendant disputes them, and in so doing, construe[s] them in the light most congenial to the plaintiff's jurisdictional claim." Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007). "Those facts put forward by the defendant become part of the mix only to the extent that they are uncontradicted." Id.

The prima facie method "offers little assistance in closer, harder-to-call cases, particularly those that feature conflicting versions of the facts." Foster-Miller, 46 F.3d at 145. Where it is inappropriate to use the prima facie standard, courts may use the "preponderance standard" or the "likelihood standard." See Foster-Miller, 46 F.3d at 145-47. In using the preponderance standard, a court conducts fact-finding "in the traditional way, taking evidence and measuring the plaintiff's jurisdictional showing against a preponderance-of-the-evidence standard." Foster-Miller, 46 F.3d at 145. The "likelihood standard" is an intermediate standard. See Boit, 967 F.2d at 677. In applying this standard, a court conducts an evidentiary hearing and weighs the evidence but makes findings limited to "whether the plaintiff has shown a likelihood of the existence of each fact necessary to support personal jurisdiction." Id.; see Foster-Miller, 46 F.3d at 146. In contrast, when the court "applies the prima facie standard and denies the motion to dismiss, it is implicitly, if not explicitly, ordering 'that hearing and determination [of the

11

motion to dismiss] be deferred until the trial.'" Boit, 967 F. 2d at 676.

Certain cases may also warrant jurisdictional discovery. "A diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of in personam jurisdiction may . . . be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 625 (1st Cir. 2001). The "diligence" prong "includes the obligation to present facts to the court which show why jurisdiction would be found if discovery were permitted." Id. at 626. The "colorable" standard requires some showing that discovery is needed or likely to be useful. See Dynamic Image Techs., Inc. v. United States, 221 F.3d 34, 38 (1st Cir.2000). However, "even when the plaintiff has been diligent and has made a colorable claim for personal jurisdiction, the district court still has broad discretion to decide whether discovery is required." Swiss Am. Bank, 274 F.3d at 625-26. Nevertheless, "courts generally will grant jurisdictional discovery if the plaintiff can show that the factual record is at least ambiguous or unclear on the jurisdiction issue." In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proceedings, 136 F. Supp. 3d 968, 973 (N.D. Ill. 2015).

b. Analysis

AOP has not presented a prima facie case for personal jurisdiction over PEC. However, as explained below, the court finds that limited discovery on the issue of personal jurisdiction is justified.

A federal district court may exercise personal jurisdiction over non-resident defendants to the same extent as a state court in the state in which the district court is located. See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F. 3d 42, 51 (1st Cir. 2002). Massachusetts courts have personal jurisdiction over non-residents only if jurisdiction comports with Due Process and is permitted by a Massachusetts statute, such as the long-arm statute, Mass. Gen. Laws Chapter 223A, §3. See Bulldog Investors Gen. P'ship v. Sec'y of the Commonwealth, 457 Mass. 210, 215 (2010).

There are two types of personal jurisdiction, specific and general. Each is subject to its own set of statutory and Due Process constraints. Specific jurisdiction is permissible under Massachusetts General Laws Chapter 223A, §3. Among other things, §3 authorizes personal jurisdiction over "a person, who acts directly or by an agent, as to a cause of action . . . arising from the person's . . . transacting any business in [Massachusetts]." For jurisdiction to exist under this provision of the Massachusetts statute, "the facts must satisfy two

13

requirements -- the defendant must have transacted business in Massachusetts, and the plaintiff's claim must have arisen from the transaction of business by the defendant." Tatro v. Manor Care, Inc., 416 Mass. 763, 769-71 (1994); see also Evans Cabinet Corp. v. Kitchen Int'l, Inc., 593 F.3d 135, 146 (1st Cir. 2010).

The court must "construe the 'transacting any business' language of the statute in a generous manner, and, in applying the clause to the[] facts, [] must focus on whether the defendant[] attempted to participate in the commonwealth's economic life." Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015) (quoting United Electrical Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1087 (1st Cir.1992)) (internal marks omitted). Whether a claim "arises from" the transacted business depends on "whether the transacted business was a 'but for' cause of the harm alleged in the claim." Id. (citing Tatro v. Manor Care, Inc., 416 Mass. 763, 625 N.E.2d 549, 551 (1995)).

If the requirements of Massachusetts General Laws Chapter 223A, §3 are satisfied, Due Process also requires that PEC have sufficient "minimum contacts" with Massachusetts so that subjecting it to that forum's jurisdiction will not offend the "traditional notions of fair play and substantial justice." United Electrical Workers, 960 F.2d at 1087* (quoting International Shoe Co. v. Washington, 325 U.S. 310, 316 (1945)). A court may only exercise jurisdiction over a defendant whose "conduct and

14

connection with the forum State" are "such that [the defendant] should reasonably anticipate being haled into court there." World-Wide Volkswagen, 444 U.S. at 297. The First Circuit has held that Due Process requires three elements be satisfied before a court may exercise specific personal jurisdiction:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

United Electrical Workers, 960 F.2d at 1089\*.

"The first inquiry, relatedness, asks whether 'the claim underlying the litigation . . . directly arise[s] out of, or relate[s] to, the defendant's forum-state activities.'" Astro-Med, Inc. v. Nihon Kohden America, Inc., 591 F.3d 1, 9 (1st Cir 2009) (quoting N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25 (1st Cir.2005)). "[T]here must be more than just an attenuated connection between the contacts and the claim; the defendant's in-state conduct must form an important, or [at least] material, element of proof in the plaintiff's case." Phillips v. Prairie Eye Center, 530 F. 3d 22, 27 (1st Cir. 2008). This means that the defendant's in-forum conduct must be at least the but-for cause of the plaintiff's injury, and the conduct's connection to the

15

plaintiff's claim may not be too "attenuated or indirect." Harlow
v. Children's Hospital, 432 F. 3d 50, 60-61 (1st Cir. 2005). "The
relatedness test is a 'flexible, relaxed standard.'" Id.

The "purposeful availment" requirement "represents a rough
quid pro quo: when a defendant deliberately targets its behavior
toward the society or economy of a particular forum, the forum
should have the power to subject the defendant to judgment
regarding that behavior." Carreras v. PMG Collins, LLC, 660 F.3d
549, 555 (1st Cir.2011). "The cornerstones of this inquiry are
voluntariness and foreseeability." C.W. Downer & Co. v. Bioriginal
Food & Sci. Corp., 771 F.3d 59, 66 (1st Cir. 2014). The court must
determine whether the defendant "'deliberately' has engaged in
significant activities within a state . . . or has created
'continuing obligations' between himself and residents of the
forum," such that "he manifestly has availed himself of the
privilege of conducting business" in the state and "shielded"
himself with the "benefits and protections of the forum's laws."
Burger King, 471 U.S. at 474-75. His interactions with in-state
residents "must be voluntary and not based on the unilateral
actions of another party." Adelson, 510 F.3d at 50; see also World-
Wide Volkswagen, 444 U.S. at 298. Moreover, they cannot be so
"'[r]andom,' 'fortuitous,' or 'attenuated'" that the defendant
could not foresee litigation in the forum. Burger King, 471 U.S.
at 475.

16

Finally, even where relatedness and purposeful availment are satisfied, the court may exercise specific personal jurisdiction only if doing so is "reasonable" in light of the First Circuit's "Gestalt factors." See, e.g., Adams, 601 F.3d at 5. These include:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Nowak v. Tak How Invs., 94 F.3d 708, 716 (1st Cir. 1996).

In this case, AOP has not made a prima facie showing that PEC is subject to specific jurisdiction in Massachusetts because it has not shown that PEC purposefully availed itself of this forum. None of PEC's alleged contacts with Massachusetts that relate to this dispute targeted "the society or economy" of Massachusetts such that PEC could be said to have "manifestly . . . availed [it]self of the privilege of conducting business" here. Carreras, 660 F.3d at 555; Burger King, 471 U.S. at 474-75. AOP proffers evidence that PEC held two meetings with AOP in Massachusetts and made decisions regarding this dispute in Massachusetts, among other things. See Widmann Decl. ¶¶12, 14 (Dkt. No. 6). However, these activities relate to Massachusetts only because they physically occurred here. AOP is an Austrian corporation, and PEC is Taiwanese. The contracts at issue contemplate performance in Europe, North Africa, and the Middle East. See Manufacture

17

Agreement Annex 7 (Dkt. No. 53-1 under seal at 54-55). They are governed by German law. See License Agreement §18.1 (Dkt. No. 53-1 under seal at 23); Manufacture Agreement §53-1 (Dkt. No. 53-1 under seal at 47). Merely having discussions or making decisions concerning these contracts from Massachusetts does not involve purposeful availment of the forum, when the contracts themselves have no impact on Massachusetts's society or economy. Therefore, AOP has not made a sufficient showing of specific jurisdiction to survive the motion to dismiss.[1]

However, AOP has presented a colorable claim that the court has general jurisdiction over PEC. Therefore, it is appropriate to permit limited discovery to develop that claim. See Swiss Am. Bank, 274 F.3d at 625.

General jurisdiction is permitted under Massachusetts General Laws Chapter 223A, §2 if a corporation is "organized under the laws of, or maintain[s] . . . its principal place of business in, this commonwealth." Similarly, general jurisdiction over a corporation comports with Due Process when the corporation is "at home" in the forum, which almost always requires the corporation to be incorporated in or to have its principal place of business

---

[1] The court may reconsider this conclusion based on evidence that may be developed when AOP conducts the limited jurisdictional discovery the court is authorizing.

in the forum. See BNSF Ry. Co. v. Tyrrell, 137 S.Ct. 1549, 1558 (2017) (citing Daimler AG v. Bauman, 134 S.Ct. 746, 760 (2014)). In this case, both parties acknowledge that PEC was incorporated in Taiwan. The court, therefore, has general jurisdiction over PEC only if Massachusetts is PEC's "principal place of business."

When determining the citizenship of a corporation for the purpose of deciding whether diversity jurisdiction exists, the Supreme Court defines the "principal place of business" as the corporation's "nerve center," meaning "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." Hertz Corp. v. Friend, 130 S. Ct. 1181, 1186 (2010). It is usually the corporation's headquarters, "provided that the headquarters is the actual center of direction, control, and coordination . . . and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)." Id. at 1192. The nerve center "is a single place." Id. at 1193. The First Circuit has indicated that a similar test applies when determining a corporation's principal place of business for the purpose of assessing personal jurisdiction. See Kuan Chen v. United States Sports Acad., Inc., 956 F.3d 45, 57 (1st Cir. 2020).

AOP has proffered evidence that several of PEC's highest-ranking executives conduct PEC business from Massachusetts. PEC Chief Executive Officer KC Lin has signed documents and held

19

meetings in Massachusetts, and has a residence in Massachusetts as well. See Ex. 2 to Nov. 18, 2020 Floyd Decl. (Dkt. No. 50-2) (annual report listing KC Lin as President of PEC USA, with Burlington business address); Widmann Decl. ¶¶12, 14 (Dkt. No. 6) (KC Lin attending Massachusetts meetings with AOP); Ex. 5 to the Nov. 18, 2020 Floyd Declaration at 4 (Dkt. No. 50-5) (KC Lin listing personal address in Lexington, Massachusetts in connection with patent assignment); Ex. 1 to Wilske Decl. (Dkt. No. 33-3) (KC Lin executing power of attorney in Waltham, Massachusetts). His son Samuel Lin, another PEC executive involved in high-level decision-making, also works in Massachusetts. See Samuel Lin Witness Statement, Ex. 5 to Widmann Decl., at 23 (Dkt. No. 6-1). The Chair of PEC's Board of Directors and the Vice-President of United States Operations were both present at meetings in Massachusetts on behalf of PEC, and the Vice-President of United States Operations has identified the Burlington office as his business address. See Zimmerman Affidavit, Ex. 8 to Mar. 29 Floyd Decl. (Dkt. No. 39-1 at 33); Widmann Decl. ¶¶12, 14 (Dkt. No. 6).

In addition, what appears to be the United States website for PEC includes Burlington, Massachusetts as the defendant's address. See Ex. 1 to Nov. 18 Floyd Decl. (Dkt. No. 50-1 at 3). Moreover, the email addresses used by PEC's representatives in communicating with plaintiff include the URL for the United States website. See Ex. 4 to Widmann Decl. (Dkt. No. 6-1 at 20). Finally, the

Arbitration Award indicates that PEC was founded by Taiwanese-Americans who worked for American companies, indicating that PEC's executives have close ties to the United States. See Arbitration Award ¶103 (ex. 3 to Widmann Decl.) (Dkt. No. 18).

PEC, however, asserts that its headquarters is in Taiwan. It proffers evidence that it was incorporated in Taiwan, keeps its corporate records at a headquarters in Taiwan, and has numerous personnel in Taiwan. See Lin Decl. ¶¶2-3. While it has a subsidiary in Burlington, Massachusetts, PEC claims that it does not itself have property, offices, facilities, addresses, or telephone numbers in Massachusetts. Id. ¶9. However, PEC has not proffered evidence indicating that, in practice, PEC's executives are actually directing the corporation from the Taiwan headquarters rather than from Massachusetts.

Viewing all of this evidence, AOP has not made a prima facie showing of general jurisdiction. Its evidence suggests that "high level officers" may "direct, control and coordinate the corporation's activities" to some extent from Massachusetts. Hertz, 130 S. Ct. at 1186. However, even accepting AOP's evidence as true and construing it in the light most favorable to AOP, it does not show that PEC's officers direct its activities to a greater extent from Massachusetts than from Taiwan.

However, PEC has similarly failed to show that its officers direct its activities from Taiwan to a greater extent than from

21

Massachusetts. Accordingly, "the factual record is at least ambiguous or unclear" as to which location is PEC's nerve center. In re Testosterone Replacement Therapy, 136 F. Supp. at 973. The court, therefore, finds that AOP has made a colorable claim of general personal jurisdiction.

In addition, AOP has diligently pursued its claim for jurisdictional discovery, including its "obligation to present facts to the court which show why jurisdiction would be found if discovery were permitted." Swiss Am. Bank, 274 F.3d at 626. At the April 29, 2021 hearing, AOP stated that it sought discovery regarding how much time PEC executives spend in Massachusetts as compared to Taiwan, whether PEC pays for their travel to Massachusetts, and whether corporate decisions are made from Massachusetts. Discovery on these issues should permit the court to determine which location is PEC's principal place of business, a fact-intensive inquiry that relies on evidence primarily in the possession of PEC. Accordingly, allowing limited discovery on the issue of personal jurisdiction is appropriate. See Whittaker Corp. v. United Aircraft Corp., 482 F.2d 1079, 1086 (1st Cir. 1973) (recognizing that "discovery concerning jurisdictional issues is appropriate where complex factual matters are in question and where a party has been diligent and is somewhat unfamiliar with his adversary").

22

4. <u>Motion to Strike</u>

AOP has moved to strike the affidavit of D.J. Lin that PEC filed as an exhibit to its supplemental memorandum regarding issues discussed at the April 29, 2021 hearing. See Dkt. No. 62 (Motion to Strike); Dkt. No. 55-1 (Affidavit). AOP argues that the court only ordered the parties to file supplemental <u>memoranda</u>, and that it was, therefore, improper for PEC to file an affidavit that provides factual information. AOP also argues that the affidavit is irrelevant under a <u>prima facie</u> analysis, and that in any case the factual information in it does not alter the "nerve center" analysis.

The court need not decide whether it was appropriate for PEC to file a supplemental affidavit at this stage of the proceedings. The facts asserted in the affidavit do not alter the outcome of the court's analysis of personal jurisdiction. If anything, the affidavit provides additional reason to permit discovery so the assertions it includes can be tested. Lin asserts that Taiwan is PEC's "principal place of business." Whether Taiwan is actually the principal place of business turns on whether Taiwan or Massachusetts is "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." <u>Hertz Corp.</u>, 130 S. Ct. at 1186. The affidavit at issue states that PEC was incorporated in Taiwan, keeps its corporate records there, and has numerous employees there. See Lin

Aff. ¶¶2-3. It also provides a screenshot of PEC's Chinese-language website, which describes the Taiwan location as PEC's headquarters. See Lin Aff., Ex. 1 (Dkt. No. 55-1 at 5). Further, it describes many ways that it is not connected to Massachusetts, stating, among other things, that PEC has no real property in Massachusetts, has no financial accounts here, and is not licensed to do business here. See Lin Aff. ¶¶9-12.

Because the court is denying the motion to dismiss for lack of personal jurisdiction and allowing the motion for jurisdictional discovery, it is not allowing the motion to strike the Lin affidavit. The information in the Lin affidavit may be tested in the discovery that will be conducted.

### 5. Motion for Equitable Attachment

AOP has moved, pursuant to Federal Rule of Civil Procedure 64, for an equitable attachment that would restrain PEC from transferring or otherwise disposing of its United States patents. See Dkt. No. 19. However, courts may not enjoin parties over which they do not have personal jurisdiction. See United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1099 (1st Cir. 1992) (vacating preliminary injunctions as "nullities" where plaintiffs failed to establish personal jurisdiction over defendant). At this point, the court has not found that it has personal jurisdiction over PEC. Accordingly, it

24

is reserving judgment on the request for an equitable attachment until it resolves the issue of personal jurisdiction.

V.    ORDER

In view of the foregoing, it is hereby ORDERED that:

1.    The Motion to Dismiss the Petition for Lack of Personal Jurisdiction and Insufficient Service of Process and to Adjourn the Petition Pursuant to Article VI of the New York Convention (Docket No. 27) is DENIED with prejudice to the extent that PEC moves for adjournment or for dismissal for insufficient service of process. It is DENIED without prejudice to the extent that PEC moves to dismiss for lack of personal jurisdiction.

2.    The Motion to Strike Portions of Respondent PEC's Supplemental Brief in Support of Its Motion to Dismiss Petition and Exhibits (Dkt. No. 62) is DENIED.

3.    The Motion for Leave to Obtain Jurisdictional Discovery (Dkt. No. 42) is ALLOWED. The parties shall, by August 13, 2021, conduct discovery limited to the issue of whether the court has personal jurisdiction over PEC.

4.    Defendant shall, by August 27, 2021, file any renewed motion to dismiss for lack of personal jurisdiction.

5.    The plaintiff shall respond by September 16, 2021.

6.    Defendant shall file any reply by September 23, 2021.

7.    If necessary, a hearing on a renewed motion to dismiss will be held on October 6, 2021, at 2:00 p.m.

25

UNITED STATES DISTRICT JUDGE