UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
AOP ORPHAN PHARMACEUTICALS    )
AG,                           )
        Plaintiff,            )
                              )
        v.                    )   C.A. No. 20-12066-MLW
                              )
PHARMAESSENTIA CORPORATION,   )
        Defendant.            )
```

MEMORANDUM AND ORDER

WOLF, D.J.                                    March 16, 2022

On April 21, 2021, the court ordered the parties to file forthwith a redacted version of the Arbitration Award plaintiff AOP Orphan Pharmaceuticals AG ("AOP") has sought to have confirmed in this case. See Dkt. No. 46. They did not comply. At an April 29, 2021 hearing, the court ordered them to file redacted versions of the Arbitration Award, as well as the contracts relevant to this case, by May 4, 2021. See Apr. 29, 2021 Tr. 45:24-46:1 (Dkt. No. 59); see also May 3, 2021 Order ¶2 (Dkt. No. 54). The parties failed to agree on appropriate redactions. Therefore, on May 10, 2020, the court ordered them to each file their respective proposed redactions. See Dkt. No. 61. In response, defendant PharmaEssentia Corporation ("PEC") stated that it seeks no redactions to the Arbitration Award, that it did not object to AOP's proposed redactions to the contracts, but that it did object to some proposed redactions to the Arbitration Award. See Dkt. No. 69 under

seal ¶¶2, 5-6. AOP filed redacted versions of each document. See Dkt. No. 67.

As the First Circuit has written:

> In Nixon v. Warner Communications, Inc., 435 U.S. 589 (1978), the Supreme Court acknowledged that "the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." Id. at 597 (footnotes omitted). The privilege extends, in the first instance, to "materials on which a court relies in determining the litigants' substantive rights." Anderson v. Cryovac, Inc., 805 F.2d 1, 13 (1st Cir.1986).

F.T.C. V. Standard Fin. Mgmt. Corp., 830 F.2d 404, 408 (1st Cir. 1987). This means that "the presumption that the public has a right to see and copy judicial records attaches to those documents which properly come before the court in the course of an adjudicatory proceeding and which are relevant to the adjudication." Id. at 412-13; see also Anderson, 805 F.2d at 13. Among other things, "[p]ublic access to judicial records and documents allows the citizenry to monitor the functioning of our courts, thereby insuring quality, honesty and respect for our legal system." Id. at 410; Nat'l Org. for Marriage v. McKee, 649 F.3d 34, 70 (1st Cir. 2011) (same).

Nevertheless, "the public's right to inspect such records is not absolute." Standard Fin. Mgmt. Corp., 830 F.2d at 410. The court may impound records to "prevent [the records] from being ... 'sources of business information that might harm a litigant's

2

competitive standing.'" In re Gitto Global Corp., 422 F.3d 1, 6 (1st Cir. 2005) (quoting Nixon, 435 U.S. at 598). "[P]rivacy rights of participants and third parties are [also] among those interests which, in appropriate cases, can limit the presumptive right of access to judicial records." United States v. Kravetz, 706 F.3d 47, 62 (1st Cir. 2013). "[W]here the public's right of access competes with privacy rights, it is proper for the district court, after weighing the competing interests, to edit and redact a judicial document in order to allow access to appropriate portions of the document." Id. at 62.

However, in the "balancing of interests ... the scales tilt decidedly toward transparency." Nat'l Org. for Marriage, 649 F.3d. at 70. Therefore, "[o]nly the most compelling reasons can justify non-disclosure of judicial records." Id. (quoting Standard Fin. Mgmt. Corp., 830 F.2d at 410). The First Circuit has repeatedly emphasized that "sealing of judicial documents 'must be based on a particular factual demonstration of potential harm, not on conclusory statements.'" Kravetz, 706 F.3d at 60 (quoting Standard Fin. Mgmt. Corp., 830 F.2d at 412; Anderson, 805 F.2d at 7).

In its memorandum in support of its proposed redactions, AOP states that it redacted information falling into one of five categories: product pricing, product chemical composition, marketing and production schedules and timelines, contractual duration, and third-party names. See Dkt. No. 65 under seal at 6.

3

However, some of AOP's redactions do not fall into any of those categories. For example, AOP has proposed redacting information regarding the parties' arbitration costs. See Pl. Redacted Arbitration Award ¶¶900-918 (Dkt. No. 67-7 under seal). AOP also proposes redacting many details regarding the design of its clinical studies, such as the number of participants, that do not fall into any of the identified categories. See id. ¶¶134-39. With respect to such redactions, AOP has provided no justification.

In addition, AOP does not provide "a particular factual demonstration of potential harm" for each of the five categories of information it discusses. Its only justification for redacting references to "the chemical composition and application of the product" is that this is "highly confidential and proprietary business information 'that if made public could undermine AOP's commercial interests.'" Pl. Mem. Supp. Redactions at 7 (Dkt. No. 65 under seal) (quoting May 12, 2021 Widmann Decl. ¶10 (Dkt. No. 66 under seal)). Similarly, AOP argues that the names of third parties involved in its enterprise with PEC should be redacted because they reveal "sensitive information regarding commercial relations" and would "cause harm if made public," but AOP fails to explain why this is the case. Id. at 8. (quoting May 12, 2021 Widmann Decl. ¶8).

AOP provides more detail as to why product pricing should be redacted. It explains that pricing information "provide[s] clear

4

insight into production costs, profit margins, and planned product pricing once a product is placed on the market." Id. at 7. Similarly, it explains why marketing and production timelines, including the duration of its contracts, are sensitive: they allow competitors to "know[] the marketing and production schedules in different territories" such that they could "copy[] such strategy and/or launch[] competing products in such territories." Id. at 8. Publishing this information would, according to AOP, force it to incur the costs of devising a new market strategy. Id.

In view of the foregoing, the court finds AOP's justifications for redacting product pricing, as well as marketing and production timelines, persuasive. In addition, although AOP did not provide detail to justify redactions regarding the product's chemical composition, the court finds that such information is commercially sensitive and that AOP may be unjustly harmed by its disclosure. Moreover, the court has not relied on this information in determining the substantive rights of the parties.

Therefore, it is hereby ORDERED that, by March 23, 2022, AOP shall file for the public record redacted versions of the Arbitration Award and contracts that redact only information related to product chemical composition, product pricing, and marketing and production schedules and timelines.

_____
UNITED STATES DISTRICT JUDGE